IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Angelo Ham, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 6:12-cv-02998-JMC |
| James Sly; Assistant Warden Nolan; Warden McCall; John J. Brooks; James C. Dean; Bruce Oberman; Tonya Hancock; Ms. Canty; L. Johnson; Cpt. Commanders; Francis Bowman; Jack Brown, Darrell Cain; Ms. Johnson; Darlington County Sheriffs Office; Calvin Jackson; Tim Robertson; John McLeod; Jay Hodge; Sherrie Baugh; Will Rogers; Kernard Redmond; Anthony Padula, LCI Warden; Tonya Hancock, Commissary Staff; Ms. Canty, Commissary Staff; Jason Davis, SMU Lt.; Franklin Richardson, SMU Lt.; Lesia Johnson, LCI IGC, | ) **ORDER AND OPINION** |
| Defendants. | ) |

On November 13, 2012, *pro se* Plaintiff Angelo Ham ("Plaintiff") filed an amended complaint[1] pursuant to 42 U.S.C. § 1983 (ECF No. 10) alleging, along with another claim, that Defendants James Sly, Assistant Warden Nolan, Warden McCall, John J. Brooks, James C. Dean, Bruce Oberman, Cpt. Commanders[2], Francis Bowman, Jack Brown, Darrell Cain, Ms. Johnson, Anthony Padula, Tonya Hancock, Ms. Canty, Jason Davis, Franklin Richardson, and Lesia Johnson (collectively referred to as "the SCDC Defendants") violated the Eighth

---

[1] Plaintiff's original complaint was filed on October 17, 2012. (ECF No. 1).
[2] The correct spelling of this defendant's name is Cpt. Commander. (*See, e.g.*, ECF No. 10-1 at 1; ECF No. 57 at 1).

1

Amendment by failing to provide for Plaintiff's adequate hygiene and sleeping comfort. *Id.* at 1, 4. Plaintiff has been granted leave to proceed *in forma pauperis* in this action. (ECF No. 15).

This matter is now before the court upon the magistrate judge's Second Report and Recommendation ("the Second Report"), filed December 10, 2013.[3] (ECF No. 97). The Second Report recommended that the court grant the SCDC Defendants'[4] motions for summary judgment (ECF Nos. 57, 91). For the reasons stated herein, the court **ACCEPTS** the magistrate judge's Second Report. The court thereby **GRANTS** the SCDC Defendants' motions for summary judgment and **DISMISSES** Plaintiff's amended complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

The court concludes upon its own careful review of the record that the factual and procedural summation in the magistrate judge's Second Report is accurate, and the court adopts this summary as its own. However, a recitation of the relevant facts, in a light most favorable to Plaintiff, and a brief outline of the procedural history is warranted.

Plaintiff is currently incarcerated in the Special Management Unit ("SMU") at the Lee Correctional Institution ("LCI"), a facility managed by the South Carolina Department of Corrections ("SCDC"). (ECF No. 10-1 at 2). Plaintiff has a history of back pain that began as early as the spring of 2006, (*see* ECF No. 10-4 at 1; ECF No. 10-1 at 53), and skin problems that began as early as the winter of 2008, (*see* ECF No. 10-1 at 48; ECF No. 10-1 at 48).

---

[3] On January 7, 2013, the magistrate judge issued the First Report and Recommendation ("the First Report"), which recommended that the court summarily dismiss Plaintiff's claim against Defendants Darlington County Sheriff's Office, Calvin Jackson, Tim Robertson, John McLeod, Jay Hodge, Sherrie Baugh, Will Rogers, and Kernard Redmond (collectively referred to as "the Darlington County Defendants"). (ECF No. 16). On January 26, 2014, the undersigned accepted the First Report and dismissed Plaintiff's claim against the Darlington County Defendants with prejudice. (ECF No. 101).

[4] Although Defendants Ms. Canty and Jason Davis are not explicitly identified in the Second Report, *see* ECF No. 97 at 2, the court presumes that the Second Report's recommendation to grant summary judgment applies to these defendants as well. (*See* ECF No. 57 at 1; ECF No. 91 at 1).

**Facts Relevant to Maintenance of Personal Hygiene**

Throughout late 2008 and the entirety of 2009, LCI medical staff attended to issues related to Plaintiff's dry scalp and skin. On July 30, 2008, dandruff shampoo was ordered for Plaintiff after medical staff noticed white flakes in Plaintiff's hair. (ECF No. 10-1 at 42). On September 13, 2008, medical staff found that Plaintiff had a reddish rash on his back and legs caused by dry skin. *Id.* at 41. On October 14, 2008, Plaintiff was noted to have dry skin from his use of the state soap, which caused the skin to crack on his heels, in between his toes, and up and down both legs. *Id.* at 40. On that same day, PCI medical staff provided cream for Plaintiff to treat athlete's foot. *Id.* Throughout the final months of 2008 and nearly the entire year of 2009, Plaintiff frequently visited medical staff regarding skin issues. *Id.* at 36–40. During this period, Plaintiff was issued a special soap, hydrocortisone cream, and ammonium lactate. *Id.* In September and December of 2009, medical staff noted that Plaintiff's personal hygiene was satisfactory. *See id.* at 13–14.

In early and mid-2010, Plaintiff continued to request ammonium lactate and dandruff shampoo from the medical staff. *Id.* at 31, 34–35. In the summer of 2010, Plaintiff submitted a grievance to the prison staff stating that he was not receiving adequate monthly hygiene supplies per SCDC policy. (ECF No. 10-1 at 22). Specifically, Plaintiff stated that he only received two bars of soap instead of three bars. *Id.* Plaintiff also complained that he was missing the two three-in-one shampoo-shave-and-shower gels and the four disposable razors that should have been included in his monthly allotment. *Id.* Around this time, LCI medical staff noticed that Plaintiff's scalp had dandruff and that Plaintiff complained of scalp itching and sores. (ECF No. 10-4 at 3).

The Warden responded to Plaintiff's grievance on August 20, 2010, indicating that the indigent package of monthly hygiene products only included two bars of soap and did not include shampoo-shave-and-shower gels or disposable razors. (*See* ECF No. 10-2 at 2). On August 25, 2010, Plaintiff appealed the Warden's decision reiterating his argument that SCDC policy required an additional bar of soap, the three-in-one gels, and disposable razors. (ECF No. 10-1 at 23). In October 2010, LCI medical staff observed that Plaintiff's lower legs were very dry, cracked, and peeling. (ECF No. 10-1 at 28). Medical staff continued to document issues with Plaintiff's skin and dandruff through at least May 2012. (*Id.* at 25–27; ECF No. 57-4 at 29–43). On February 2, 2012, medical staff prescribed nystatin cream for Plaintiff's dry, pigmented, and flaky skin as well as for his rashes. *Id.* at 39. Prison officials responded to Plaintiff's appeal on July 18, 2012, nearly two years after it was filed, stating that the hygiene procedure had been changed. (ECF No. 10-1 at 23). The officials stated that under the new policy, Plaintiff was being provided with the necessary supplies. *Id.* In June of 2012, Plaintiff grieved that he was not receiving enough cleaning supplies and that he was not allowed three showers per week. (ECF No. 10-2 at 4–5). As late as October 12, 2012, medical staff observed that Plaintiff had very dry and cracking skin on both of his legs. (ECF No. 57-4 at 44).

**Facts Pertinent to Mattress and Back Pain Issue**

On April 21, 2010, Plaintiff was observed to have mild scoliosis. (ECF No. 10-4 at 2). One year later on April 21, 2011, Plaintiff complained to medical staff that he was experiencing back pain due to his inadequate mattress. (ECF No. 57-4 at 32–33). On that day, medical staff observed that Plaintiff had a normal spine and no scoliosis. *Id.* On June 11, 2011, Plaintiff submitted a grievance complaining that his mattress had been taken from him on June 7, 2011, and that he was left with a half-inch piece of cotton on which to sleep. (ECF No. 10-2 at 6–7).

Plaintiff stated that this sleeping situation aggravated his scoliosis and back pain. *Id.* On June 14, 2011, Plaintiff complained of chronic back pain and scoliosis, and expressed to medical staff that he wanted a better mattress. (ECF No. 57-4 at 33). On that day, medical staff observed that Plaintiff had difficulty leaning forward but noted that SCDC does not provide mattresses at the requests of prisoners. *Id.* The Warden responded to Plaintiff's grievance on July 22, 2011, explaining that Defendant Lt. Davis confiscated surplus cotton from Plaintiff's mattress. (ECF No. 91-3 at 3). The Warden stated that cotton was taken from Plaintiff's mattress because Plaintiff possessed a "double mattress" containing an excessive amount of cotton. *Id.* The Warden further stated that the extra cotton in Plaintiff's mattress was considered contraband by the prison officials and that Plaintiff was left with a mattress. *Id.* On this same day, Plaintiff complained to medical staff that he did not have an adequate mattress. (ECF No. 57-4 at 34). Plaintiff requested a strong muscle relaxer or other medication for his back pain. *Id.*

Plaintiff appealed the Warden's decision on August 1, 2011, stating that if the amount of cotton Plaintiff possessed was excessive and therefore contraband, Plaintiff would have been charged with possession of contraband pursuant to SCDC discipline policy. (ECF No. 91-4 at 1). On August 5, 2011, Plaintiff again complained to medical staff about his back pain and requested a muscle relaxer. (ECF No. 57-4 at 35–36). Over one year after filing his appeal, on September 25, 2012, an LCI official responded that Plaintiff should have been formally charged and sanctioned for damage under SCDC policy but that Plaintiff was not so charged. (ECF No. 91-4 at 1). The response reiterated that the excess cotton was rightly confiscated from Plaintiff as contraband. *Id.*

**Procedural Background**

Plaintiff filed his original complaint on October 17, 2012, and an amended complaint on November 13, 2012. (ECF Nos. 1, 10). In his amended complaint, Plaintiff alleged that the SCDC Defendants violated the Eighth Amendment by not providing adequate hygiene and cleaning supplies as well as "illegally" taking Plaintiff's mattress. (ECF No. 10 at 1; ECF No. 10-1 at 4). The SCDC Defendants moved for summary judgment. (ECF Nos. 57, 91). Plaintiff responded in opposition to the SCDC Defendants' motions for summary judgment. (ECF Nos. 86, 94). On December 10, 2013, the magistrate judge issued the Second Report recommending that the court grant the SCDC Defendants' motions for summary judgment. (ECF No. 97). Plaintiff objected to the Second Report on December 27, 2013.

### STANDARD OF REVIEW

The magistrate judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce,* 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the magistrate judge's Report, this court is not

required to give any explanation for adopting the recommendation. *See Camby v. Davis,* 718 F.2d 198, 199 (4th Cir. 1983).

**Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or

denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999).

### Plaintiff's Personal Hygiene Maintenance Claim

The magistrate judge explained that to succeed on an Eighth Amendment claim for conditions of confinement, Plaintiff must show that (1) he was deprived of a sufficiently serious human need and that (2) prison officials were deliberately indifferent to that deprivation. (ECF No. 97 at 4–5) (citing *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)). The Report stated that Plaintiff did not meet the first prong of showing a serious deprivation because he did not show that his skin irritations were directly caused by the lack of additional hygiene items. *Id.* at 5. The Report further found that Plaintiff failed to meet the second prong of deliberate indifference because the medical records indicated that Plaintiff was seen and treated by the medical staff on numerous occasions regarding his skin problems. *Id.* The magistrate judge concluded that even if the prison provided less hygiene products than was mandated under SCDC policy, this fact alone did not amount to a constitutional violation. *Id.* at 5–6.

In his Objections, Plaintiff contends that under the Eighth Amendment, prison officials are required to provide adequate hygiene items. (ECF No. 99 at 1). Plaintiff states that since the courts and Congress have not specifically defined what an adequate amount consists of, the court should require the amount outlined by SCDC policy. *Id.* at 2. Plaintiff further explains that in

order to receive his hygiene items he was forced to go to medical services or to pay for them. *Id.* Plaintiff apparently contends that Defendants are constitutionally obligated to provide adequate hygiene products directly to him each month and that they should not require him to acquire these products on his own accord from medical services or by purchase. *Id.*

The court finds that on these facts Plaintiff has failed to create a genuine issue of deliberate indifference. Plaintiff's dry skin and scalp issues began in late 2008, and yet Plaintiff did not complain about the inadequacy of the hygiene products he received until the summer of 2010. The record indicates that Plaintiff's skin issues were chronic and ongoing, and that they far pre-dated Plaintiff's alleged deprivation of an additional bar of soap, three-in-one shampoo-shave-and-shower gels, and disposable razors. Thus, Plaintiff's skin issues were not primarily caused by the lack of hygiene products. Moreover, the PCI medical staff has been very attentive to Plaintiff's dermatology needs, prescribing special soap, skin creams, and dandruff shampoo. The court is not aware of any legal standard that would hold some prison officials accountable for needs that other prison officials have met. In other words, the PCI medical staff's treatment of Plaintiff's skin issues precludes a finding that Defendants were deliberately indifferent to Plaintiff's needs. Therefore, Defendants are entitled to summary judgment for this claim.

**<u>Plaintiff's Mattress and Back Pain Claim</u>**

In analyzing Plaintiff's mattress claim, the magistrate judge incorporated the same serious deprivation and deliberate indifference legal standards applied in evaluating Plaintiff's hygiene claim. (*See* ECF No. 97 at 6). The Report concluded that Plaintiff's mattress claim failed because Plaintiff's mattress was not taken away from him but instead just the excess cotton was removed. *Id.* The magistrate judge found that the confiscation of excess cotton did

not create a deprivation so serious as to raise a constitutional concern. *Id.* The magistrate judge also stated that Plaintiff did not cite a significant injury from sleeping on a thinner mattress. *Id.*

In his Objections, Plaintiff argues that the SCDC Defendants took his entire mattress, and claims that he was left with a piece of cotton that was only a half-inch thick. (ECF No. 99 at 3). Plaintiff appears to contend that when he first arrived to SCDC, he was provided with an adequate mattress. *Id.* at 5. Plaintiff further states that by destroying this adequate mattress and providing Plaintiff an inadequate mattress, the SCDC Defendants were deliberately indifferent to Plaintiff's needs. *Id.* Plaintiff asserts that he reported his back injuries to the medical staff and was treated for them. *Id.*

The court finds that on the one hand Plaintiff contends he was left with a piece of cotton on which to sleep, (*see* ECF No. 99 at 3), but on the other hand, Plaintiff states that he was provided a mattress, albeit an inadequate one, (*see id.* at 5). Given the SCDC Defendants' assertion that Plaintiff was provided a mattress and that the SCDC Defendants merely removed excess cotton from Plaintiff's mattress, there is no genuine dispute as to whether Plaintiff possessed a mattress. While Plaintiff argues that the mattress he was provided was inadequate and led to back pain, Plaintiff has failed to demonstrate deliberate indifference on the part of the SCDC Defendants. The record indicates that LCI medical staff has been attentive to Plaintiff's back pain and Plaintiff himself acknowledges that he was treated for his back problems, (*see id.* at 5). Therefore, Plaintiff's claim fails as a matter of law, and the SCDC Defendants are entitled to summary judgment.

## CONCLUSION

Based on the aforementioned reasons and after a thorough review of the Second Report and the record in this case, the court **ACCEPTS** the magistrate judge's Report and

Recommendation (ECF No. 97). The court **GRANTS** the SCDC Defendants' motions for summary judgment (ECF Nos. 57, 91), thereby **DISMISSING** with prejudice Plaintiff's action.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 3, 2014
Greenville, South Carolina

11